UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Enterprises Leonard Inc, and
Sarah Leonard,

        Plaintiffs,        Case No: 15-12450
                                        Hon. Victoria A. Roberts

V.

Montrose, Charter Township of; and
Mark Emmendorfer,

        Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 26]**

**I.    Introduction**

Sarah Leonard ("Leonard") owns and operates a towing company, Enterprises Leonard Inc., which does business under other names as well. Plaintiffs filed a two count Complaint against the Charter Township of Montrose (the "Township") and Mark Emmendorfer, as Supervisor of the Township, alleging violations of the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §1983. Plaintiffs accuse Defendants of retaliation and discriminatory practices on the basis of gender and because Leonard filed prior lawsuits against the Township.

Defendants' Motion for Summary Judgment is **DENIED**.

**II.    Background**

In 2002, Leonard filed suit against the Township and the Chief of Police. One year later, in 2003, Leonard and her business filed again, alleging the Township did not

want to do business with her and other women on the basis of gender. The 2003 lawsuit settled; the Township agreed to give preference to local area businesses when possible. The Township uses Louie's Towing & Auto Service ("Louie's") for vehicle repair and maintenance. That work is separate from the 911 towing and impound calls which Leonard's business and another local towing company, Ronnie's Towing, allegedly receive on an equal rotational basis. But, the parties dispute whether the work is evenly distributed.

Defendant Mark Emmendorfer was appointed Township Supervisor in May of 2005. Emmendorfer was on the Township Board when the 2003 lawsuit settled and he published a brochure referencing the loss of money to the Township from Leonard's lawsuits.

In 2014, Leonard expressed interest in performing the Township's repair work in addition to the towing and impound calls. Leonard alleges she engaged in First Amendment protected activity by meeting with Emmendorfer twice and by attending a Township Board meeting. Leonard also claims her prior lawsuits are protected activity. At the Board meeting, Leonard sought Township business and information regarding the Township's alleged non-compliance with the settlement agreement by using towing companies located outside the Township.

In response to Leonard's request for repair work, Emmendorfer solicited proposals from ten vendors. The Township reviewed each vendor's repair license and discovered that Leonard's business did not have a valid license; it expired on January 4, 2011. Leonard says the license snafu was a mistake on the part of the State of Michigan and was resolved before the final decision to retain Louie's was made.

The Township has a Public Safety Committee composed of Emmendorfer, Tom Tithof and Fred Domine. The Public Safety Committee met on July 31, 2014 and decided the Township should continue to use Louie's to do the Township's repair work. Louie's is not located in Montrose Township. At the August 19, 2014 Township Board meeting, Emmendorfer made a recommendation to continue using Louie's.

At this same Board meeting, the lapsed license by Leonard's business was discussed. The matter was tabled until the following Board meeting to allow additional information gathering. Although the matter was tabled, Leonard says it was not placed on the agenda for the following meeting.

The Township amended its purchasing policy by adding a new Ordinance section, Section 31.02(D), allowing the Township Supervisor or department head to secure vendors to service or repair Township equipment. Leonard claims the change to the Ordinance allows the Township the discretion to pick vendors based on subjective criteria and that it was enacted to prevent her from doing work for the Township.

III. **Legal Standard**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56 (e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV. Discussion

### A. Count 1: First Amendment

#### 1. The Petition Clause

Leonard says Defendants retaliated against her and her business because she exercised her First Amendment right to petition the government for redress of grievances.

The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const., Amdt. 1. "The Petition Clause protects petitioning of 'all departments of the Government,' and a private citizen's business interest can be the subject of a constitutionally protected petition." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (citations omitted). There is a separate analysis for claims brought under the Free Speech Clause, which protects open debate, and the Petition Clause, which includes only activity to a government audience. *Id.* at 522.

Defendants say Plaintiffs fail to demonstrate the Petition Clause of the First Amendment is applicable because it is not clearly referenced in the Complaint; the

4

Complaint makes multiple references to the First Amendment Free Speech "public concern" test.

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *See Erickson v. Pardus*, 551 U.S. 89 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Plaintiffs' Complaint adequately states a claim under the Petition Clause. She alleges violations of the First Amendment in retaliation for standing up to the Township Board and for her prior lawsuits. The law is clearly established to protect those who lose government work in retaliation for complaints of discrimination. *Gable v. Lewis*, 201 F.3d 769, 770 (6th Cir. 2000).

Defendants are correct that the Complaint makes multiple references to the First Amendment's Free Speech public concern test. However, any claim under the Free Speech Clause is now abandoned; Plaintiffs legal arguments clarify the First Amendment claim is brought under the Petition Clause. There is no prejudice against the Defendants; they had an opportunity to respond to Plaintiffs' arguments in their reply.

### 2. Issues of Fact Preclude Summary Judgment

There are three elements to a First Amendment retaliation claim: (1) the plaintiff engaged in a constitutionally protected activity; (2) the defendants' adverse action caused plaintiffs to suffer an injury that would likely chill a person of ordinary firmness

5

from continuing to engage in that activity; and (3) the adverse action was motivated, at least in part, as a response to the exercise of the plaintiff's constitutional rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). If plaintiff meets this burden, the burden shifts to defendant. *Id.* Defendants are entitled to summary judgment if it is shown the same action would have occurred in the absence of the constitutionally protected activity. *Id.*

Plaintiffs meet their initial burden. Leonard references five different instances of protected conduct, including her past lawsuits and various meetings with Emmendorfer and the Township Board. Leonard says as a result of her protected activity, she suffered losses of as much as $148,000 per year. Leonard also provided evidence that these actions were motivated, at least in part, because of her prior lawsuits. She maintains that her business submitted the lowest bid for the repair work. She says the Township consists of a "good 'ol boy'" network which thinks it is above the law. ECF No. 30 at 636. Leonard testified in a deposition that Fred Domine, a current Board member, confronted Leonard during her 2005 lawsuit and allegedly said, "I don't like your business practice, the way you've sued us." *Id.* Board member Dar Eldred testified in his deposition that he wished the lawsuit would go away "[b]ecause I don't like lawsuits. I mean, that's just personal with me." Eldred dep. at p. 19, ll 23-24.

On October 22, 2014, Leonard says Dar Eldred came to her business and asked "So do you believe that this bid process in some fashion was done to discriminate or punish you?" ECF No. 30 at 638. Leonard allegedly told him "I would certainly hope not. Everyone gave their word that bygones were bygones. They apologized for their past actions and said that they would keep all the business local." *Id.* at 639. Leonard

says Eldred then said, "[w]ell, do you know that they call you 'Suing Sadie' and complain that you've sued them?" *Id.* Leonard Dep. at p. 62 ll 21-22. Eldred also allegedly said during this same conversation: "I believe that's why you're not working for them." Leonard Dep. at 68 ll 15-16. And, "[w]ell, wouldn't you think that means they're still upset because you sued them?" Leonard Dep., at 68, ll 20-21. This conversation allegedly took place on October 22, one day after the Board met and adopted the new Ordinance section, Section 31.02(D).

Defendants argue there has been no retaliation because Plaintiffs remained on the towing and impound list after the 2003 lawsuit and any discrepancy between tow assignments cannot be attributed to the Township; motorists involved in accidents select any towing company. Defendants also insist the process of retaining the initial vendor to do the repair work was fair because they requested bids from multiple vendors. Finally, Defendants reference several reasons for the decision including Leonard's tax lien, arrears on property taxes, and failure to maintain a vehicle repair license.

There is a genuine issue of material fact as to whether Defendants' decision to award the repair work to Louie's was motivated in part by Leonard's earlier lawsuits. Leonard had the lowest bid and she claims that the tax and licensing issues were resolved prior to the final decision to award the bid.

    3.    **The Township**

Defendants contend the Township is entitled to dismissal of all claims asserted against it because Plaintiffs fail to identify a policy that could be construed as facially unconstitutional and there is no evidence of a clear and persistent pattern of

unconstitutional conduct on the part of Township employees.

Dismissal of Count 1 against the Township would be premature. There is no question that after this bidding process, the Township permanently changed the process by which it selects vendors. Without referencing exact dates, but sometime after the August Board meeting, Defendants say Emmendorfer had a conversation with Fire Chief George Taylor and Police Chief Darrel Ellis. Following this conversation, the City Attorney drafted Ordinance 14-212 amending the Township's purchasing policy which says in part:

> Section 31.02 of the Montrose Code of Ordinances is hereby amended by the addition of a new sub-section (D), which shall provide as follows:
>
> (D) When securing the services of a vendor to service or repair Township's equipment such as copy machines and computers, as well as vehicles, tractors and lawn mowers, the Township Supervisor or department head shall have authority to employ the provider. Consideration in the selection of the service provider shall be given to those providers who are appropriately licensed and skilled and who will best service the economic interests of the Township. Further consideration shall be given to qualified providers operating within the Township.

Montrose Charter Township Ordinance 14-212, Section 31.02(D).

Leonard says the new ordinance section makes the selection of service providers subject to completely subjective criteria and the purpose was to prevent her business from doing Township work.

Plaintiffs have shown the Township has a policy or custom that is the moving force behind the alleged deprivation of constitutional rights. There is a genuine issue of fact as to whether the Ordinance was altered, at least in part, in retaliation against Plaintiffs. Plaintiffs demonstrate sufficient disagreement regarding the Township's motivations for Count 1 to proceed to trial against it.

### 4.     Emmendorfer is Not Entitled to Qualified Immunity

Emmendorfer is not entitled to qualified immunity.

The purpose of qualified immunity is to balance a plaintiff's right to damages for constitutional violations against the competing interest of protecting public officers from overly burdensome lawsuits.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Therefore, to hold a public officer accountable, the right the defendant is charged with violating must be both clearly established and one which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Although it need not be the case that 'the very action in question has previously been held unlawful, ... in the light of pre-existing law the unlawfulness must be apparent.'"  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

Since there is a question as to whether a constitutional violation has occurred and because the law was clearly established, Plaintiffs allege sufficient facts that qualified immunity is not proper.

## B.     Count 2: Equal Protection

To state an Equal Protection Clause claim, Leonard must allege a state actor intentionally discriminated against her because of membership in a protected class. *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (citations omitted).

### 1.     Plaintiffs Establish the First Three Elements of a Prima Facie Case of Discrimination with Circumstantial Evidence

Defendants say Plaintiff's Equal Protection claim fails because she cannot show intentional discrimination based on gender. However, that does not necessarily mean her claim fails.  While none of Leonard's evidence is properly categorized as direct

9

evidence of gender discrimination, she does provide circumstantial evidence.

Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Foster v. Judnic*, 963 F. Supp. 2d 735, 756 (E.D. Mich. 2013) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003)).

When a plaintiff relies on circumstantial evidence to prove her claim, the Court's analysis uses the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff puts forth a prima face case of discrimination, defendant must "articulate some legitimate, nondiscriminatory reason" for his actions. Foster, 963 F. Supp. at 756. (citation omitted). If the defendant does so, the burden of production shifts back to the plaintiff to demonstrate the proffered reason is a mere pretext. *Id.* (citation omitted).

To establish a prima facie case of discrimination, Leonard must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) different treatment of a similarly-situated non-protected person." *Foster*, 963 F. Supp. 2d at 756 (applying this framework to an equal protection discrimination claim brought by female owner of engineering consulting firm against the Michigan Department of Transportation alleging discrimination based on gender and race by not awarding various contracts) (citing *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir.2013) (discussing race discrimination) and *Warf v. U.S. Dept. of Veterans Affairs*, 713 F.3d 874, 879 (6th Cir.2013) (listing similar elements for a gender discrimination prima facie prima facie case.)).

Leonard claims Defendants discriminated against her based on gender and gave

preferential treatment to male-owned towing companies. Circumstantial evidence supports her claim. Leonard provides a chart contrasting herself with Louie's Towing. Leonard highlights the following facts: (1) she was ordered not to do free work for the Police Department unlike Louie's Towing; (2) she is located within the Township; (3) a male owned tow company used as a sub-contractor received work even though it is unlicensed; (4) work that was promised to Leonard was given to male owned businesses; (5) Leonard did not receive work despite being the lowest bid; and (6) a mechanic used by Leonard was alleged to be an inferior mechanic.

Leonard is a member of a protected group because of her gender. She has offered evidence that she is qualified for the job in question. Although Defendants dispute whether Leonard was licensed, she says that issue was resolved prior to the final acceptance of Louie's bid. As already mentioned, the diversion from her business, if true, is sufficient to establish an adverse action. Leonard also calculated how much money her business lost as a result of Defendants' alleged discrimination. Plaintiffs meet their burden regarding the first three prongs of the test. As elaborated below, there is an issue of material fact as to whether the male-owned businesses are similarly situated.

### 2. There is a Genuine Issue of Material Fact on Whether Louie's and Ronnie's are Similarly Situated

For Leonard to show that she was treated differently than similarly situated males for the same or similar conduct, she must show all relevant aspects of her employment situation are nearly identical to those of the alleged similarly situated men. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). Additionally, the individuals with whom

Leonard compares herself must have "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Defendants distinguish Louie's Towing. They say: (1) it is a licensed mechanical repair facility; (2) there is no evidence Louie's Towing ever failed to maintain its repair license; and (3) Louie's Towing employed a full time mechanic.

The parties dispute whether they have substantially similar qualified teams of employees. Leonard says her mechanic is even more qualified than Louie's while Defendants say she doesn't even employ a mechanic full time. The parties also dispute whether they offered substantially similar proposals for the work. Defendants say Louie's is more qualified and says the decision to keep using Louie's was based on Louie's experience working on police emergency vehicles, pricing, and warranties. Leonard says Defendants leave out the fact that they told her she could not do free work for the Police Department but then awarded the work to Louie's Towing partly because it offered some free services.

Since both parties offer evidence on whether the companies are similarly situated, and dispute different factors that are relevant to the inquiry, there is a genuine issue of material fact regarding this element of the claim.

### 3. Class-of-one Equal Protection Claim

Leonard says Defendants violated the Equal Protection Clause by intentionally discriminating against her because she is a woman. In her response, Leonard asserts, for the first time, that she has an additional Equal Protection Clause claim as a "class of

one."

The first mention of a second Equal Protection claim is in Plaintiffs' response. To the extent Plaintiffs seek to expand their equal protection claim to assert new theories, they may not do so in response to summary judgment. *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). The proper way to raise a new claim is by amending the Complaint.

## V.   Conclusion

Defendants' Motion for Summary Judgment is **DENIED**. The entire case will proceed to trial.

**IT IS ORDERED**.

S/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated:  September 20, 2016

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 20, 2016.

s/Linda Vertriest
Deputy Clerk

---